NOT FOR PUBLICATION                                                    [22, 25]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
RENZER BELL, d/b/a NAKHI               :      Civil Action No. 05-2262 (FLW)
GENERAL INVESTMENT,                    :
                                        :
            Plaintiff,                 :
                                        :              **OPINION**
      v.                               :
                                        :
UNITED AUTO GROUP, INC. AND            :
CLASSIC AUTO GROUP, INC.               :
                                        :
            Defendants.                :
_____:

APPEARANCES:

For Plaintiffs:
RENZER BELL, PRO SE
5736 CLEVLAND ROAD
JACKSONVILLE, FL 32209

For Defendants:
STEPHEN G. TRAFLET, ESQ.
TRAFLET & FABIAN, ESQS.
CARRIAGE COURT TWO
264 SOUTH STREET
MORRISTOWN, NJ 07960-1945

**WOLFSON, United States District Judge:**

      Plaintiff Renzer Bell has sued Defendants United Auto Group, Inc. and Classic Auto

Group, Inc. in connection with his contract to purchase an automobile from Defendants' car

dealership.  The Court must decide whether: 1) Plaintiff's breach of contract bars his negligence

and unjust enrichment claims; 2) Plaintiff's punitive damage claim can survive summary

judgment; and 3) the Court should grant Plaintiff's motion for leave to file a third amended complaint so that he can add negligent misrepresentation and civil rights claims against Defendants.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  For the reasons stated below, Defendants' motion for partial summary judgment is granted and Plaintiff's motion for leave to file an amended complaint is denied.

## I.  BACKGROUND

Plaintiff Renzer Bell ("Bell" or "Plaintiff") alleges that he and his company, Nakhi General Investment,[1] are in the business of purchasing and trading high-end luxury automobiles, that he is a merchant as defined by the Uniform Commercial Code ("UCC"), Second Am. Compl. ¶¶ 1, 12, and that Defendants, who are in the business of selling high-end luxury automobiles, are also merchants under the UCC, id. ¶ 2.  On January 25, 2000, Bell signed a purchase order, on behalf of "Naki General Instruments-Mr. Renzer Bell" for the purchase of a "00 BMW Model Z8" from Defendants' car dealership, Classic Chevrolet/Buick and BMW, which is located in Turnersville, New Jersey.  Order, Defs.' Ex. B. Plaintiff alleges that it was his understanding that he was "designated to receive the first allocated BMW Z-8 and/or 2001 BMW Z-8 automobile delivered" to the dealership.  Pl.'s Aff. ¶ 8.  The price agreed to in the purchase order was simply the Manufacturer's Suggested Retail Price ("MSRP"). Order, Defs.' Ex. B.  Although the purchase order contained an anti-assignment provision, Order, Defs.' Summ. J., Ex. B, on September 22, 2000, Bell, on behalf of his company, Nakhi General Investment, L.L.C., entered into an "Assignment of Contract of Sale-Motor Vehicle" with

---

[1]Plaintiff's company, a New York corporation, was formerly known as Naki General Investment, L.L.C., a Delaware corporation.

Crevier BMW, Inc.,  Assignment of Contract of Sale-Motor Vehicle, Defs.' Ex. C.   According to the terms of the assignment, Crevier BMW, Inc. agreed to pay Naki General Investment, L.L.C. $75,000 in excess of the MSRP for a 2001 BMW Z8.  Id.

According to Defendants, they never received a 2000 BMW Z8, and, as such, never delivered one to Bell.  Defs.' Statement of Undisputed Facts ¶ 9.  Furthermore, in their Answer, Defendants explain that the "first allocated 2001 BMW Z-8 was sold to another buyer," Answer ¶ 6, and Defendants returned Bell's deposit to him, Defs.' Statement of Undisputed Facts  ¶ 10.  Bell filed suit against Defendants in the United States District Court for the Southern District of New York.  The case was transferred to this district on April 28, 2005.

In his Second Amended Complaint, Bell asserts claims for breach of contract, negligence, and unjust enrichment.  Plaintiff is seeking $1,000 compensatory damages, $75,000 lost profits and $150,000 incidental and consequential damages for breach of contract; $76,000 lost profits, $150,000 incidental and consequential damages and $225,000 punitive damages for negligence; and $100,000 lost profits and $225,000 punitive damages for unjust enrichment.  Second Am. Compl.  On August 9, 2005, Defendants filed a motion for partial summary judgment on Plaintiff's claims for negligence, unjust enrichment and punitive damages and Plaintiff filed his motion for leave to file a third amended complaint adding two claims.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Celotex

<u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).   To avoid summary judgment the non-moving party

must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

issue for trial.'" <u>Celotex Corp.</u>, 477 U.S. at 324.   A genuine issue of material fact is one that will

permit a reasonable jury to return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby,

Inc.</u>, 477 U.S. 242, 248 (1986).  In evaluating the evidence, the Court must "view the inferences

to be drawn from the underlying facts in the light most favorable to the [nonmoving] party."

<u>Curley v. Klem</u>, 298 F.3d 271, 276-77 (3d Cir. 2002) (quoting <u>Bartnicki v. Vopper</u>, 200 F.3d

109, 114 (3d Cir. 1999)).  Conclusory allegations do not meet the non-moving party's duty to set

forth specific facts showing that a genuine issue of material fact exists and a reasonable

factfinder could rule in its favor.  <u>Ridgewood Bd. of Ed. v. Stokley</u>, 172 F.3d 238, 252 (3d Cir.

1999).

### B.  Motion For Partial Summary Judgment

1) Plaintiff's Negligence Claim

Defendants seek partial summary judgment on Plaintiff's claims for negligence and

unjust enrichment; their motion does not apply to Plaintiff's breach of contract claim.[2]   Article 2

of the Uniform Commercial Code applies to "transactions in goods." N.J.S.A. 12A:2-102. The

---

[2]The place of contract governs the choice of law unless another jurisdiction has a more significant relationship with the parties and/or transaction.  <u>State Farm Mutual Auto. Ins. Co. v. Estate of Simmons</u>, 84 N.J. 28, 37 (1980).  Upon examining the contract at issue here, the Court is unable to find a choice-of-law provision.  However, the contract is illegible in certain places. Since the car dealership with which Plaintiff contracted to purchase the BMW is located in New Jersey and the car was to be delivered to New Jersey, the Court is applying New Jersey law to this case.

term "goods" is defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid[.]" N.J.S.A. 12A:2-105(1). A "sale" involves "the passing of title from the seller to the buyer for a price." N.J.S.A. 12A:2-106(1). The parties agree that the dispute is governed by the UCC.

Here, Plaintiff's negligence claim is in reality a regurgitation of his breach of contract claim. In Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555 (1985), the New Jersey Supreme Court held that a commercial buyer seeking damages for economic losses resulting from a defective good may recover solely for breach of warranty under the UCC, and not for negligence or strict liability. The decision was in large part based on the distinction drawn by the court between tort and contractual principles:

> The purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damages that the parties have, or could have, addressed in their agreement. Spring Motors, 98 N.J. at 579-80.

Spring Motors was decided in 1985, and courts facing the issue since then have agreed with its line of reasoning. See, e.g., Custom Communications Engineering, Inc. v. E.F. Johnson Co., 269 N.J. Super. 531, 541-42 (Super. A.D. 1993) ("[A] transaction should not be removed from the ambit of the UCC to the area of tortious conduct simply by making general allegations" sounding in tort.). Here, in essence, Plaintiff is a commercial buyer seeking damages from Defendants for economic loss for an alleged breach of a contract for the sale of goods. There is nothing in the

5

record to suggest that tort principles have any bearing on this case so that the case should be removed from the ambit of the UCC.  Therefore, the Court finds that Plaintiff may not recover for negligence and summary judgment is granted as to Plaintiff's negligence claim.

2) Plaintiff's Unjust Enrichment Claim

Plaintiff is also suing Defendants for unjust enrichment, although--as was the case with his negligence claim--this claim is in reality a "dressed up" version of his breach of contract claim.  "Under New Jersey law, '[t]he constructive or quasi -contract is the formula by which enforcement is had of a duty to prevent unjust enrichment or unconscionable benefit or advantage.' " Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226 (3d Cir.1983) (quoting Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 29 (1958)) (alteration in original). "Quasi-contractual obligations are imposed by the law for the purpose of bringing about justice." Id. Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law. National Amusements, Inc. v. N.J. Tpk. Auth., 261 N.J.Super. 468, 478 (Law Div.1992), aff'd, 275 N.J.Super. 134 (App.Div.1994). Quasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties. Van Orman v. Am. Ins. Co., 680 F.2d 301, 310 (3d Cir.1982); see also Suburban Transfer, 716 F.2d at 226. Therefore, recovery based on a quasi-contract theory is mutually exclusive of a recovery based on a contract theory. See id.; see also Caputo v. Nice-Pak Prods., Inc., 300 N.J.Super. 498, 507 (App. Div.1997).  Here, it is undisputed that an express, valid, and unrescinded contract governs the relationship of the parties.  Moreover, to establish unjust enrichment as a basis for quasi-contractual liability, "a plaintiff must show both that defendant received a benefit and that retention of the benefit would be unjust." VRG Corp. v. GKN Realty

6

Corp., 135 N.J. 539, 554 (1994). There is nothing in the record to suggest that Defendant received any benefit the retention of which would be unjust.  Therefore, summary judgment is granted as to Plaintiff's claim for unjust enrichment.

    3) Punitive Damages

    Plaintiff is also seeking punitive damages in connection with this action.  However, "[w]here the essence of a cause of action is limited to a breach of [a commercial] contract, punitive damages are not appropriate regardless of the nature of the conduct constituting the breach." Sandler v. Lawn-A-Mat Chem. and Equip. Corp., 141 N.J.Super. 437, 449 (App. Div.), certif. denied, 71 N.J. 503 (1976).  In actions based on private contracts, "even where the breach is malicious and unjustified, exemplary damages are not allowable." Id.  There are several limited exceptions to the general rule that punitive damages will not be awarded for a breach of contract, the most common of which involve fiduciary relationships, such as a real estate broker and seller or a principal and agent. Id. at 449-50. Limited exceptions have also been carved out for breach of a marriage contract, and for a public utility's failure to comply with its special statutory public duty. Id. at 449.  Here, the parties contracted that Plaintiff would purchase a BMW from Defendant and the essence of this case is limited to the breach of that commercial contract. Therefore, this case does not fit within any of these exceptions and summary judgment is granted as to Plaintiff's claim for punitive damages.

**C.  Motion for Leave to File an Amended Complaint**

    Plaintiff has filed a motion for leave to file a third amended complaint in order to add causes of action for negligent misrepresentation and civil rights violations.  Federal Rule of Civil Procedure 15(a) gives a court discretion to allow amendment of a pleading once as a matter of

course, and provides that leave to amend "shall be freely given when justice so requires." <u>Fed. R. Civ. P.</u> 15(a). After the first amendment of a pleading, a party may only amend thereafter "by leave of court or by written consent of the adverse party." <u>Id.</u> Interpreting Rule 15(a), the Supreme Court stated:

> [T]his mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.' <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).

In <u>Heyl & Patterson International, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.</u>, 663 F.2d 419, 425 (3d Cir. 1981), <u>cert. den. sub nom.</u> <u>F.D. Rich Housing of the Virgin Islands, Inc. v. Gov't of the Virgin Islands</u>, 455 U.S. 1018 (1982), the Third Circuit stated that undue prejudice is the "touchstone" for denial of leave to amend. Undue prejudice occurs when the non-moving party is "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the [moving party] been timely." <u>Id.</u> at 426 (citations omitted). Incidental prejudice is not a sufficient reason to deny leave to amend; rather, any resulting prejudice must be truly "undue." <u>Id.</u>

Absent a showing of undue prejudice to the non-moving party, "denial must be grounded in [the moving party's] bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure a deficiency by amendments previously allowed or futility of amendment." <u>Heyl</u>, at 425; <u>see also</u> <u>Hewlett-Packard Co. v. Arch Assoc. Corp.</u>, 172 F.R.D. 151, 153 (E.D. Pa.1997). In assessing the "futility" of an amendment, the Court "applies the same standard of legal

8

sufficiency as applies under Rule 12(b)(6)." MedPointe Healthcare Inc. v. Hi-Tech Pharmacal Co., 380 F.Supp.2d 457, 462 (D.N.J. 2005) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997)).

Plaintiff's proposed negligent misrepresentation claim is seemingly based upon a transcript provided by Plaintiff of an alleged conversation between him and Thomas Cossari, the General Manager of Defendants' car dealership, in which Cossari told Plaintiff that he would not be able to purchase the dealership's first 2001 BMW Z8.  Pl.'s Ex. E.  The Court notes at the outset that Plaintiff's negligent misrepresentation claim is yet another regurgitation of his breach of contract claim.  Moreover, in order to sustain a cause of action based on negligent misrepresentation, the plaintiff must establish that the defendant negligently made an incorrect statement of a past or existing fact, that the plaintiff justifiably relied on it and that his reliance caused a loss or injury. Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000); H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983).  Since the alleged statement by Cossari affirms Plaintiff's own allegation that Defendants did not sell him a car pursuant to the contract, Plaintiff is not alleging that Cossari made an incorrect statement of a past or existing fact.  Thus, the claim could not survive a motion to dismiss, and, as such, the amendment is futile.  Moreover, while Plaintiff does not identify the date of his alleged conversation with Cossari, the events that give rise to this litigation occurred in 2000 and 2001.  However, Plaintiff gives no explanation for the fact that he waited until this late date to seek to amend his complaint to add this claim.  Therefore, Plaintiff's motion for leave to amend his complaint is denied as to the proposed claim for negligent misrepresentation.

9

The only basis for Plaintiff's proposed civil rights claim that the Court is able to discern is Plaintiff's assertion that he is an African-American and his allegation that "the ultimate purchaser of the subject automobile [was a] European-American." Pl.'s Statement of Material Facts ¶ 11-12.[3]  He also alleges that he was not made aware of the identity of the ultimate purchaser until August 31, 2005--although on June 1, 2004, while the case was pending in the Southern District of New York, Plaintiff sought leave to amend his complaint to add civil rights claims pursuant to "U.S.C. Title 42, Chapter 21, Subchapter II, Section 2000(a) and U.S.C. Title 42, Chapter 21, Subchapter I, Section 1981," as a result of Defendants' alleged denial of Plaintiff's "Equal Rights Under Law" and "long standing business practice."[4]  Notice of Mot., Defs.' Opp. Br., Ex. C.  Defendants argue that they will be unduly prejudiced by allowing Plaintiff at this late date to add a civil rights claim to a UCC case because Plaintiff "is seeking to introduce an <u>entirely</u> unrelated issue into the litigation" that would necessitate "significant changes in the established defense strategy and discovery plan."  Defs.' Opp. Br. at 11 (emphasis in original).  Furthermore, they question the excuse offered by Plaintiff for his delay and argue that Plaintiff's bad faith is evidenced by: 1) the fact that Plaintiff already sought leave to amend his complaint to add civil rights claims, as mentioned above; and 2) sworn testimony that

---

[3]The Court presumes that Plaintiff is suggesting that the ultimate purchaser was a non-minority.  Defendants maintain that "no evidence has been developed in discovery or provided to Plaintiff that would identify the race (which is unknown) of the ultimate purchaser of the vehicle."  Defs.' Opp. Br. at 19.  Moreover, Defendants maintain that they were never aware of Plaintiff's race during the relevant time period, since all of the dealings surrounding the contract here took place over the telephone.  Id.

[4]By way of an Order dated March 31, 2005, the case was transferred to this district and Plaintiff's motion to amend was denied "without prejudice to its renewal before the transferee district."  Memorandum & Order, Bell v. Classic Chevrolet/Buick and BMW, 04-cv-693 (PKC), (S.D.N.Y. Mar. 31, 2005).

Plaintiff gave on May 23, 2005 in <u>Bell v. Schaeffer Buick BMW</u>, 03-CV-10315 (S.D.N.Y.) in which he made no mention of any discrimination on the part of Defendants but stated that he sued Defendants in this case because they "balked at making the vehicle available at MSRP," Bell Dep. Tr. at 148:8-11, Defs.' Opp. Br., Ex. E, which was the price agreed upon in the purchase order.  Despite numerous submissions, Plaintiff has failed to refute Defendants' allegation of bad faith or further explain why he waited until this late date to seek to amend his complaint to add this claim.  For these reasons, as well as the futility of this claim, Plaintiff's motion for leave to amend his complaint is denied as to the proposed civil rights claim.

## III.  CONCLUSION

For the reasons stated above, Defendants' motion for partial summary judgment is granted and Plaintiff's motion for leave to file an amended complaint is denied.  An appropriate Order follows.

Dated: January 30, 2006

                                                            S/ Freda L. Wolfson
                                                            Honorable Freda L. Wolfson
                                                            United States District Judge

11