UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENZER BELL, d/b/a NAKHI GENERAL INVESTMENT, | Civil Action No. 05-2262 (FLW) |
| Plaintiff, | |
| v. | OPINION |
| UNITED AUTO GROUP, INC. AND CLASSIC AUTO GROUP, INC. | |
| Defendants. | |

APPEARANCES:

For Plaintiffs:
RENZER BELL, PRO SE
5736 CLEVELAND ROAD
JACKSONVILLE, FL 32209

For Defendants:
STEPHEN G. TRAFLET, ESQ.
TRAFLET & FABIAN, ESQS.
CARRIAGE COURT TWO
264 SOUTH STREET
MORRISTOWN, NJ 07960-1945

**WOLFSON, United States District Judge:**

Plaintiff Renzer Bell ("Bell or "Plaintiff") has sued Defendants United Auto Group, Inc. and Classic Auto Group, Inc. in connection with his contract to purchase an automobile from Defendants' car dealership. Defendants filed a motion to dismiss Plaintiff's breach of contract claim against them based on a lack of jurisdiction and Plaintiff filed a motion for an extension of time to file a motion for reconsideration/reargument in connection with the Court's decision of

January 30, 2006. As to the parties' motions, the issues are: 1) whether Plaintiff's breach of contract claim is greater than $75,000, as required by 28 U.S.C. § 1332, and 2) whether Plaintiff's motion for an extension of time to file a motion for reconsideration/reargument should be entertained notwithstanding Plaintiff's penchant for dilatoriness. For the reasons stated below, both motions are denied.

## I. BACKGROUND

Plaintiff alleges that he and his company, Nakhi General Investment,[1] are in the business of purchasing and trading high-end luxury automobiles, that he is a merchant as defined by the Uniform Commercial Code ("UCC"), Second Am. Compl. ¶¶ 1, 12, and that Defendants, who are in the business of selling high-end luxury automobiles, are also merchants under the UCC, id. ¶ 2. On January 25, 2000, Bell signed a purchase order, on behalf of "Naki General Instruments-Mr. Renzer Bell" for the purchase of a "00 BMW Model Z8" from Defendants' car dealership, Classic Chevrolet/Buick and BMW, which is located in Turnersville, New Jersey. Order, Defs.' Ex. B. Plaintiff alleges that it was his understanding that he was "designated to receive the first allocated BMW Z-8 and/or 2001 BMW Z-8 automobile delivered" to the dealership. Pl.'s Aff. ¶ 8. The price agreed to in the purchase order was simply the Manufacturer's Suggested Retail Price ("MSRP"). Order, Defs.' Ex. B. Although the purchase order contained an anti-assignment provision, Order, Defs.' Summ. J., Ex. B, on September 22, 2000, Bell, on behalf of his company, Nakhi General Investment, L.L.C., entered into an "Assignment of Contract of Sale-Motor Vehicle" with Crevier BMW, Inc., Assignment of Contract of Sale-Motor Vehicle,

---

[1] Plaintiff's company, a New York corporation, was formerly known as Naki General Investment, L.L.C., a Delaware corporation.

2

Defs.' Ex. C. According to the terms of the assignment, Crevier BMW, Inc. agreed to pay Naki General Investment, L.L.C. $75,000 in excess of the MSRP for a 2001 BMW Z8. Id.

According to Defendants, they never received a 2000 BMW Z8, and, as such, never delivered one to Bell. Defs.' Statement of Undisputed Facts ¶ 9. Furthermore, in their Answer, Defendants explain that the "first allocated 2001 BMW Z-8 was sold to another buyer," Answer ¶ 6, and Defendants returned Bell's deposit to him, Defs.' Statement of Undisputed Facts ¶ 10. Bell filed suit against Defendants in the United States District Court for the Southern District of New York. The case was transferred to this district on April 28, 2005.

In his Second Amended Complaint, Bell asserted claims for breach of contract, negligence, and unjust enrichment. Plaintiff sought $1,000 compensatory damages, $75,000 lost profits and $150,000 incidental and consequential damages for breach of contract; $76,000 lost profits, $150,000 incidental and consequential damages and $225,000 punitive damages for negligence; and $100,000 lost profits and $225,000 punitive damages for unjust enrichment. Second Am. Compl. On August 9, 2005, Defendants filed a motion for partial summary judgment on Plaintiff's claims for negligence, unjust enrichment and punitive damages and Plaintiff filed his motion for leave to file a third amended complaint adding two claims.

In an Opinion dated January 30, 2006, I granted Defendant's motion for partial summary judgment and dismissed all of Plaintiff's claims except his breach of contract claim. I also dismissed all of Plaintiff's claims for punitive damages. Finally, I denied Plaintiff's motion for leave to amend his complaint to assert a civil rights claim because I found that he failed to refute Defendants' allegation of bad faith or further explain why he waited until such a late date to seek

to amend his complaint to add this claim. On February 16, 2006, Plaintiff filed the instant motion for an extension of time to file a motion for reconsideration/reargument as to my decision of January 30, 2006.

On February 13, 2006, Defendants filed a motion to dismiss Plaintiff's breach of contract claim. They maintain that they "learned through investigation that Plaintiff received $50,000 in or about June 2005 from Crevier in a settlement of claims (including claims arising out of the Crevier Assignment) brought by Plaintiff in a separate action commenced against Crevier in 2003 in the Southern District of New York." Traflet Cert. (Feb. 10, 2006) ¶ 9. Indeed, they submitted to the Court a copy of a "Release Agreement" entered into by Plaintiff and "Michael E. Lake, Don Crevier, Crevier Motors, Inc. d/b/a Crevier BMW, Inc., and Crevier Leasing Co., Inc., and their successors, assigns, affiliates, and officers, directors, shareholders, employees, legal representatives, and insurers." Release Agreement, Defs.' Ex. E. The release agreement, dated June 23, 2005, sets forth that in consideration for $50,000.00, all of Bell's claims against the aforementioned individuals and entities are discharged and all of those individuals and entities are released from any and all liability arising from any causes of action. Id.

Additionally, Defendants maintain that subsequent to receiving Plaintiff's Rule 26 disclosures, they asked Plaintiff by letter dated July 14, 2005 to "provide a detailed itemization of all amounts received by [him] or Nahki General Investment with respect to the Assignment of Contract of Sale attached to your Rule 26(a)(1) disclosures, including ... any settlement moneys received from Crevier BMW." Letter from Stephen Traflet to Renzer Bell (July 14, 2005), Defs.' Ex. F. According to Defendants, Plaintiff never provided any information as to his

4

calculation of damages other than the Crevier Assignment and never acknowledged or discussed any settlement entered into with Crevier.

## II. DISCUSSION

### A. Motion for Reargument/Reconsideration

Local Civ. R. 7.1(i) provides that "[a] motion for reconsideration shall be served and filed within 10 business days after the entry of the order or judgment on the original motion." Local Civ. R. 7.1(i). Here, I filed my Opinion and Order granting partial summary judgment in favor of Defendants on January 30, 2006. On February 16, 2006, thirteen business days later, Plaintiff filed a motion for an extension of time to file a motion for reconsideration/reargument as to the Court's decision of January 30, 2006.

Plaintiff represents to the Court that he was unable to file a timely motion for reconsideration due to "unforeseen family matters and recurring viral illness since January 30, 2006." The Court is aware that it should be lenient towards Plaintiff as a result of his pro se status. However, the instant motion for an extension of time to file a motion for reconsideration is one of four motions for extensions of time that Plaintiff has filed since this case was transferred to this district. On January 25, 2006, Plaintiff filed a motion for an extension of time to file opposition to Defendants' motion for an order to show cause. On February 28, 2006, Plaintiff filed a motion for an extension of time to file opposition to Defendants' motion to dismiss for lack of jurisdiction and also offered "unforeseen family matters and recurring viral illness since January 30, 2006" as his reason for seeking that extension. On May 8, 2006, Plaintiff filed a motion for an extension of time to file opposition to Defendants' motion for

sanctions, the justifications for which were "extensive demands placed upon Plaintiff's time by the instant action and ongoing business commitments."

Additionally, when filing a motion for reargument or reconsideration, the movant must submit a "brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." Local Civ. R. 7.1(i). Here, Plaintiff has not done so; his papers only seek an extension. Moreover, a court will grant a motion for reconsideration only if the movant establishes one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not previously available; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995)). Plaintiff has not argued that any of these three situations exists here. Indeed, he has not provided the Court with anything to suggest that he is trying to do something other than take a second bite at the apple, which cannot be grounds for granting a motion for reconsideration. See Tischio v. Bontex, Inc., 16 F. Supp.2d 511, 533 (D.N.J.1998) ("A motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." (citation omitted)). Given these shortcomings and Plaintiff's penchant for dilatoriness, his motion for an extension of time to file a motion for reconsideration/reargument.is denied.

**B. Motion to Dismiss**

Section 1332 of title 28 provides that this Court has jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs. 28 U.S.C. § 1332. Generally, the amount claimed in the

6

plaintiff's complaint is controlling and is deemed to be the entire amount in controversy. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). Specifically, when federal subject matter jurisdiction is based on diversity of citizenship, the amount in controversy must be determined from an examination of the complaint at the time it was filed. Horton v. Liberty Mutual Ins. Co., 367 U.S. 348, 353 (1961). The party asserting federal subject matter jurisdiction must demonstrate that the amount in controversy requirement is satisfied. See Packard v. Provident Nat. Bank, 994 F.2d 1039, 1045 (3d Cir. 1993). The face of the complaint determines jurisdiction if the claim appears to be made in good faith: "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that ... the sum claimed by the plaintiff controls if the claim is apparently made in good faith." See id. at 1045-46 (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938)). If the Court finds to a "legal certainty" that the threshold amount is not met, then this Court must reject federal diversity jurisdiction. See St. Paul Mercury Indem. Co., 303 U.S. at 290; see also Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 398 (3d Cir. 2004) ("[W]e recommend that when the relevant facts are not in dispute or findings have been made the District Courts adhere to the 'legal certainty' test."); Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir.1995) ("dismissal is appropriate only if the federal court is certain that the jurisdictional amount cannot be met").

The Third Circuit instructs that in determining the amount in controversy, courts are to aggregate the claims brought in a party's complaint in order to determine if the jurisdictionally required $75,000.01 is satisfied. See Suber v. Chrysler Corp., 104 F.3d 578, 588 (3d Cir. 1997). However, the Court can only aggregate claims for which a plaintiff could in theory

7

simultaneously recover.  Id.  As Suber explains, claims are not to be aggregated to arrive at the amount in controversy if the claims are alternative bases for recovery for the same harm and the plaintiff could not be awarded damages for both.  Id.

Normally, a judgment dismissing certain claims and leaving only another claim which by itself is below the jurisdictional minimum amount in controversy, does not affect subject matter jurisdiction, since it is determined at the time the complaint was filed. Lindsey v. M.A. Zeccola & Sons, Inc., 26 F.3d 1236, 1244 n. 10 (3d Cir.1994); Nationwide Mut. Fire Ins. Co. v. T & D Cottage Auto Parts & Serv., Inc., 705 F.2d 685, 687 (3d Cir.1983); see also St. Paul Mercury Indemnity 303 U.S. at 290 (any "subsequent reduction of the amount claimed cannot oust the court's jurisdiction"); 14B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3702 (3d ed. 1998) ("[E]ven if part of the plaintiff's claim is dismissed on a motion for Summary Judgment, thereby reducing the remaining claim below the requisite amount, the court retains jurisdiction to adjudicate the balance of the claim.").

Here, in his Second Amended Complaint, Bell asserted claims for breach of contract, negligence, and unjust enrichment.  Plaintiff sought $1,000 compensatory damages, $75,000 lost profits and $150,000 incidental and consequential damages for breach of contract; $76,000 lost profits, $150,000 incidental and consequential damages and $225,000 punitive damages for negligence; and $100,000 lost profits and $225,000 punitive damages for unjust enrichment. Second Am. Compl.  I dismissed Plaintiff's negligence and unjust enrichment claims because I determined that Plaintiff's claim was really one for breach of contract only and that he could not concurrently bring claims for negligence and unjust enrichment.  Therefore, pursuant to Suber, the damages sought in connection with those claims do not factor into the calculation.  Moreover,

8

"[c]laims for punitive damages may be aggregated with claims for compensatory damages unless the former are patently frivolous and without foundation." Golden ex rel. Golden v. Golden, 382 F.3d 348, 355 (3d Cir. 2004) (internal quotations omitted). "Punitive damage claims are per se patently frivolous and without foundation if they are unavailable as a matter of state substantive law." Id. (internal quotations omitted). In this case, relying upon Sandler v. Lawn-A-Mat Chem. and Equip. Corp., 141 N.J. Super. 437, 449 (App. Div.), certif. denied, 71 N.J. 503 (1976), I found that under New Jersey law, punitive damages were unavailable to Plaintiff as a result of an alleged breach of a contract for the sale of an automobile. Thus, the punitive damages sought are also excluded from the calculation. However, Plaintiff seeks $1,000 in compensatory damages, $75,000 in lost profits and $150,000 in incidental and consequential damages in connection with his breach of contract claim. Therefore, the damages sought in connection with that claim alone are in excess of $75,000.

In support of their motion to dismiss for lack of jurisdiction, Defendants argue that it appears to a legal certainty that the claim is really for less than $75,000.01 and that Plaintiff's complaint was not made in good faith. Defendants also cite an unpublished Third Circuit opinion, B&P Holdings I, LLC. v. Grand Sasso, Inc., 114 Fed. Appx. 461, 464, 2004 WL 2190937 at *2 (3d Cir. 2004), in support of the proposition that a distinction exists between subsequent events that change the amount in controversy and subsequent revelations that reveal that the required amount was or was not in controversy at the commencement of the action and that such revelations require a dismissal for lack of jurisdiction.

Defendants argue that Plaintiff's settlement with Crevier for $50,000 constitutes such a revelation. However, Plaintiff represents that his settlement with Crevier also "pertained to an

9

automobile transaction in which the Plaintiff sourced the subject automobile from one Schaeffer Buick, Inc. of Wilmington, North Carolina." Bell Aff. ¶ 7 (Mar. 3, 2006). The Release Agreement that Defendants submitted to the Court is does not state whether it pertains to the BMW at issue here or to other dealings, including those involving a Buick. Without more information as to Plaintiff's settlement with Crevier, the Court cannot find that the settlement constitutes a revelation that Plaintiff's breach of contract claim is worth less than that required by § 1332. Furthermore, the settlement was made after the filing of the complaint here as a settlement, by definition, is a compromise. Moreover, with this meager record, I cannot find to a legal certainty that his breach of contract claim is worth less than the required $75,000.01. Finally, while I am troubled by the fact that Plaintiff did not make any mention of his settlement with Crevier in his Rule 26 disclosures and only addressed the settlement in response to this motion, I am not prepared at this juncture to rule that Plaintiff filed his complaint in bad faith. Thus, Defendants' motion to dismiss for lack of jurisdiction is denied without prejudice. Plaintiff is directed to provide discovery regarding the settlement with Crevier. In addition, Plaintiff shall provide discovery regarding the specific damages he seeks in connection with his breach of contract claim and the basis for asserting those damages at the time he filed the complaint. Specifically, beyond seeking $75,000 in lost profits, Plaintiff seeks $1,000 in compensatory damages and $150,000 in incidental and consequential damages for breach of contract. However, he has not provided Defendants or the Court with any basis for such damages. Therefore, Plaintiff shall also provide discovery as to the $1,000 in compensatory damages and $150,000 in incidental and consequential damages so that the Court can determine whether Plaintiff acted in good faith when he filed his complaint seeking those damages.

## III. CONCLUSION

For the reasons stated above, Plaintiff's motion for an extension of time to file a motion for reconsideration/reargument is denied, and Defendants' motion to dismiss for lack of jurisdiction is denied. An appropriate Order follows.

Dated: June 28, 2006

S/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge