UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RENZER BELL,  :  Civil Action No. 05-2262(NLH)
    Plaintiff,  :
v.  :  OPINION
UNITED AUTO GROUP, INC,  :
and CLASSIC AUTO GROUP, INC.,  :
    Defendants.  :

**APPEARANCES:**

Renzer Bell
5736 Cleveland Road
Jacksonville, Fl 32209

    *Pro Se*

Debra M. Albanese, Esquire
Stephen Gerard Traflet, Esquire
Traflet & Fabian, Esqs.
Carriage Court Two
264 South Street
Morristown, NJ 07960-1945

    *Attorneys for Defendants*

**HILLMAN, District Judge**

This matter has come before the Court *sua sponte* to determine whether the Court has subject matter jurisdiction to hear Plaintiff's case.[1] For the reasons expressed below,

---

[1] On two occasions, Defendants had moved to dismiss Plaintiff's action for lack of subject matter jurisdiction. As explained below, those motions were denied without prejudice. Because, however, the Court has not, until today, issued a ruling on the issue, it is still ripe. The Court raises the issue *sua sponte* because Defendants have not formally refiled their motion to dismiss. See Kontrick v. Ryan, 540 U.S. 443, 455 (2004) (holding that a court's lack of subject matter jurisdiction may

Plaintiff's Complaint must be dismissed.

## BACKGROUND

Plaintiff, Renzer Bell, *pro se*, filed a three-count Complaint against Defendants, United Auto Group, Inc. and Classic Auto Group, Inc., alleging breach of contract, negligence and unjust enrichment arising out of a purchase order for a 2001 BMW Z8 automobile.[2] In his Complaint, Plaintiff alleges that he and and his company, Nakhi General Investment, LLC ("Nakhi"), are in the business of purchasing and trading high-end luxury automobiles, and that Defendants are in the business of selling high-end luxury automobiles. On January 25, 2000, Bell signed a purchase order, on behalf of "Naki General Instruments-Mr. Renzer Bell" for the purchase of a "00 BMW Model Z8" from Defendants' car dealership, Classic Chevrolet/Buick and BMW, which is located in Turnersville, New Jersey. Plaintiff alleges that it was his understanding that he was "designated to receive the first allocated BMW Z-8 and/or 2001 BMW Z-8 automobile delivered" to the dealership. The price agreed to in the purchase order was simply the Manufacturer's Suggested Retail Price ("MSRP").

---

be raised at any time in the same civil action, even *sua sponte*). There are six other motions pending in this case, which the Court has been unable to address until the subject matter jurisdiction issue has been resolved.

[2]These facts are incorporated from previous opinions of the Court. The complaint that was transferred to this Court was Plaintiff's Second Amended Complaint.

Although the purchase order contained an anti-assignment provision, on September 22, 2000, Bell, on behalf of his company, Nakhi General Investment, L.L.C., entered into an "Assignment of Contract of Sale-Motor Vehicle" with Crevier BMW, Inc. ("Crevier"), which is located in Santa Ana, California. According to the terms of the assignment, Crevier agreed to pay Nakhi $75,000 in excess of the MSRP for a 2001 BMW Z8, which Plaintiff sought to obtain from Defendants. According to Defendants, however, because they never received a 2000 BMW Z8, they could not deliver one to Plaintiff. Furthermore, in their Answer, Defendants explained that the "first allocated 2001 BMW Z-8 was sold to another buyer," and Defendants returned Plaintiffs' deposit to him.

Bell filed suit against Defendants in the United States District Court for the Southern District of New York. The case was transferred to this district on April 28, 2005. Plaintiff originally sought $1,000 compensatory damages, $75,000 lost profits and $150,000 incidental and consequential damages for breach of contract; $76,000 lost profits, $150,000 incidental and consequential damages and $225,000 punitive damages for negligence; and $100,000 lost profits and $225,000 punitive damages for unjust enrichment. On August 9, 2005, Defendants filed a motion for partial summary judgment on Plaintiff's claims for negligence, unjust enrichment and punitive damages and

Plaintiff filed a motion for leave to file a third amended complaint adding two claims.

On January 30, 2006, District Court Judge Freda L. Wolfson, to whom this case was originally assigned, granted Defendants' motion for partial summary judgment and dismissed all of Plaintiff's claims except for his breach of contract claim, and denied Plaintiff's motion to file a third amended complaint. On February 13, 2006, during the pendency of Plaintiff's motion for reconsideration of Judge Wolfson's January 30, 3006 order, Defendants filed a motion to dismiss Plaintiff's breach of contract claim for lack of subject matter jurisdiction with regard to the jurisdictional amount in controversy.[3] Defendants argued that they "learned through investigation that Plaintiff received $50,000 in or about June 2005 from Crevier in a settlement of claims (including claims arising out of the Crevier Assignment) brought by Plaintiff in a separate action commenced against Crevier in 2003 in the Southern District of New York." Defendants submitted to the Court a copy of a "Release Agreement" entered into by Plaintiff and "Michael E. Lake, Don Crevier, Crevier Motors, Inc. d/b/a Crevier BMW, Inc., and Crevier Leasing Co., Inc., and their successors, assigns, affiliates, and

---

[3] 28 U.S.C. § 1332 provides, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

4

officers, directors, shareholders, employees, legal representatives, and insurers." The release agreement, dated June 23, 2005, set forth that in consideration for $50,000.00, all of Plaintiff's claims against the aforementioned individuals and entities were discharged and all of those individuals and entities were released from any and all liability arising from any causes of action.

In support of their motion to dismiss for lack of jurisdiction, Defendants argued that it appeared to a legal certainty that Plaintiff's claim was really for less than $75,000.01 and that Plaintiff's complaint was not made in good faith. Defendants also contended that a distinction existed between subsequent events that changed the amount in controversy and subsequent revelations that revealed that the required amount was or was not in controversy at the commencement of the action, and that such revelations required a dismissal for lack of jurisdiction. Defendants argued that Plaintiff's settlement with Crevier for $50,000 constituted such a revelation.

In a June 28, 2006 Opinion, Judge Wolfson concluded that without more information as to Plaintiff's settlement with Crevier, it could not be determined that the settlement constituted a revelation that Plaintiff's breach of contract claim was worth less than that required by § 1332. Additionally, with the "meager record" before her, Judge Wolfson could not find

to a legal certainty that Plaintiff's breach of contract claim was worth less than the required $75,000.01.

Judge Wolfson noted that even though she was troubled by the fact that Plaintiff did not make any mention of his settlement with Crevier in his Rule 26 disclosures and only addressed the settlement in response to Defendants' motion, she was not prepared at that juncture to rule that Plaintiff filed his complaint in bad faith. Therefore, Judge Wolfson denied Defendants' motion to dismiss for lack of jurisdiction without prejudice. However, Judge Wolfson also directed Plaintiff to provide discovery regarding the settlement with Crevier, and to provide discovery regarding the specific damages he was seeking in connection with his breach of contract claim and the basis for asserting those damages at the time he filed the complaint. Judge Wolfson noted that beyond seeking $75,000 in lost profits, Plaintiff was seeking $1,000 in compensatory damages and $150,000 in incidental and consequential damages for breach of contract, but Plaintiff had not provided Defendants or the Court with any basis for such damages. As a result, Judge Wolfson directed that Plaintiff was to also provide discovery as to the $1,000 in compensatory damages and $150,000 in incidental and consequential damages so that the Court could determine whether Plaintiff acted in good faith when he filed his complaint seeking those damages.

Plaintiff's case was then assigned to this Court on July 5,

6

2006. A few weeks later, Defendants renewed their motion to dismiss for lack of subject matter jurisdiction, arguing that Plaintiff did not heed the direction of Judge Wolfson in providing any additional discovery with regard to his damages and the jurisdictional amount in controversy. Oral argument was held, and the Court acknowledged that Plaintiff had not provided sufficient support for his alleged damages as directed by Judge Wolfson. Plaintiff was given "the benefit of the doubt," and provided thirty more days to submit his proof. (Feb. 20, 2007 Tr. at 38, 47.) The Court admonished, however, that Plaintiff "must specify and provide documentary proof or assert [] testimony for each of [his] elements of damages down to the penny." (Id. at 47.)

On August 3, 2007, another hearing was held on the sufficiency of Plaintiff's proofs supporting subject matter jurisdiction. By this time, Plaintiff had submitted an affidavit with regard to his damages. (Pl.' Aff., Docket No. 136.) In that affidavit, Plaintiff claims that in addition to the $75,000 in lost profits on the Crevier assignment, he lost $500 of a $1000 deposit he paid to Defendants. (Id. ¶ 5.) With regard to consequential and incidental damages, Plaintiff claims that he lost $240 in postage and $660 in telephone calls while trying to

"cover" his losses.[4] (Id. ¶¶ 6-7.) Thus, in total, Plaintiff claims that his damages are $76,400.00, which satisfies the jurisdictional amount in controversy requirement.

At oral argument, Defendants again raised the issue of Plaintiff's settlement with Crevier. Instead of focusing on whether the settlement was a subsequent revelation evidencing that Plaintiff had not pleaded in good faith the amount in controversy at the beginning of the litigation, Defendants argued that Plaintiff did not act in good faith in bringing this case against them because he knew that Crevier repudiated their contract prior to Defendants informing Plaintiff that they did not have a BMW Z8 to sell to Plaintiff. Defendants also argued that Plaintiff received $4,000 in earnest money from Crevier that Plaintiff never repaid, so that Plaintiff's claimed damages must be reduced by $4,000. Therefore, even accepting as true Plaintiff's claimed consequential and incidental damages, Defendants argue that the most Plaintiff could conceivably recover is $72,400, which is less than the jurisdictional requirement of $75,000.01.

## ANALYSIS

As an initial matter, a court's lack of subject matter jurisdiction may be raised at any time in the same civil action,

---

[4] Plaintiff has failed to submit any receipts or records of the charges for his claimed postage and telephone calls.

even initially at the highest appellate instance. <u>Kontrick v. Ryan</u>, 540 U.S. 443, 455 (2004) (citing <u>Mansfield, C. & L.M.R. Co. v. Swan</u>, 111 U.S. 379, 382 (1884) (challenge to a federal court's subject-matter jurisdiction may be made at any stage of the proceedings, and the court should raise the question *sua sponte*)). Thus, even though Defendants have also filed a motion for summary judgment, and there are outstanding motions for sanctions and discovery issues, it must first be determined whether the Court can exercise jurisdiction over this case.

The $4,000 earnest money paid from Crevier to Plaintiff is a dispositive issue as to jurisdiction. Plaintiff claims that he was supposed to receive $75,000 for providing Crevier with a BMW Z8, which Plaintiff had ordered from Defendants. Plaintiff, however, also states on several occasions that he received $4,000 as earnest money from Crevier. In the complaint he filed against Crevier in the Southern District of New York, Plaintiff claimed the following:

> 43. On or about September 25th 2000 the Plaintiff and the Defendants Crevier entered into . . . an agreement . . . to supply the latter with yet another luxury vehicle, this time with a profit to the Plaintiff of Seventy Five Thousand Dollars ($75,000.00).
> 44. Pursuant to the terms of this Agreement the Plaintiff having accepted the Defendant Crevier Leasing Co., Inc.'s deposit of Four Thousand Dollars ($4,000.00) had, for the latter's sole benefit and account, sourced the agreed vehicle.
> 45. In breach of The Agreement with the Plaintiff and without justification, the Defendant . . . notified the Plaintiff that they would no longer accept delivery of the subject vehicle as agreed.

(Renzer Bell d/b/a Nakhi General Investment v. Crevier Motors, Inc., et al., Civ. A. No. 03-10315 (S.D.N.Y.) ¶¶ 43-45.)

In an affidavit submitted to this Court, Plaintiff stated under penalty of perjury that "Crevier BMW tendered $4,000.00 as earnest money to the Plaintiff for the purchase of a second BMW Z-8 automobile in or around September 2000 with the understanding that the subject automobile was scheduled for December 2000 Production." (Bell Aff. ¶ 3, Docket No. 145.)

At oral argument on August 3, 2007, however, when asked about each of his own statements, Plaintiff would not give a straight answer. When asked by the Court several times, "Did you receive any money from Crevier that the contract referred in your complaint, [and were] such funds never returned?", Plaintiff answered, "At this stage, Your Honor, I'm not exactly sure. My previous recollection was, yes." (Id. at 34.) With regard to the amount of the earnest money, Plaintiff stated that he had "an element of doubt in his mind." (Id. at 36.) Plaintiff stated that he is "not exactly sure" because in support of their opposition to Plaintiff's affidavit of damages, Defendants submitted an affidavit of Michael Lake, Sales Manager for Crevier, which stated that the $4,000 was paid for the first assignment contract between Plaintiff and Crevier, and not specifically with regard to the third assignment contract, which is at issue in this case. (Lake Aff. ¶ 4, Docket No. 142.)

Plaintiff uses Lake's statement in his affidavit in order to cast doubt onto his own sworn statements. He also uses this affidavit when testifying at his deposition held on April 26, 2007, by stating that he received "either $500 or $4,000" from Crevier. (Aug. 3, 2007 Tr. at 47.)

The Lake affidavit has muddied the waters, but the Court will not allow Plaintiff to disavow his own pleadings and testimony. It is clear by Plaintiff's own testimony that he received $4,000 as earnest money from Crevier to "source" a BMW Z8. Based on this earnest money, Plaintiff entered into the September 25, 2000 contract, which specifically referenced the car Plaintiff attempted to "source" from Defendant Classic. Plaintiff anticipated receiving a total of $75,000 when he delivered the Classic BMW Z8 to Crevier, but Crevier had already paid him $4,000. Plaintiff never returned the $4,000 to Crevier. Consequently, Defendants' alleged breach of their contract with Plaintiff resulted in, at most, Plaintiff's loss of $71,000 of anticipated profit on his assignment contract with Crevier.

Plaintiff insists, however, that because he did not know the "ultimate fate" of the $4,000 earnest money Crevier paid to him at the time he filed this lawsuit, his assertion of jurisdiction was pleaded in good faith, and as such, his case should be able

to proceed.⁵ Plaintiff is correct that in determining whether the party asserting the jurisdiction of the court has met the amount in controversy requirement, "the sum claimed by the [party asserting the jurisdiction] controls if the claim is apparently made in good faith." State Farm Mut. Auto. Ins. Co. v. Powell, 87 F.3d 93, 96 (3d Cir. 1996) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)). Even if we assume that plaintiff as been operating in good faith, which we have reason to doubt,⁶ the general rule does not apply if upon the

---

⁵ Plaintiff's apparent unwillingness - masked as a self-professed inability - to remember or document facts known only to him and which a reasonable business person in his position would remember or know (e.g. whether he received $4,000 from Crevier) is just one example of plaintiff's failure to conduct this litigation in "good faith." From his failure to abide by the orders of Judge Wolfson, his failures to abide by the orders of this Court, his filing of pleadings in two districts that are factually inconsistent, his unwillingness to answer the Court's direct questions, his failure to provide discovery on issues that appear to be legal vulnerabilities, to the ease in which he changes facts to suit his argument, plaintiff has demonstrated that he views the litigation process as a game of hide and seek rather than full disclosure of relevant facts and a fair adjudication on the merits.

⁶ We take judicial note of the fact that the Plaintiff is a frequent litigant who has faced several dismissals and sanctions for improper conduct in the course of litigation. As one court noted:

> "In addition to the eleven claims in this District, Mr. Bell has been active elsewhere. See Bell v. Hesser, 2006 WL 1455749 (M.D.Pa., May 23, 2006) (granting defendants' motion for judgment on the pleadings); Bell v. Bray and Gillespie, LLC, 2006 WL 923741 (M.D.Fla. Apr. 10, 2006) (requiring Bell to pay opposing party's attorneys' fees in necessitating a motion to compel)."

face of the pleadings or other proof submitted, it "appears to a legal certainty that the claim is really for less." St. Paul Mercury Indem. Co., 303 U.S. at 288-89. It is then up to the plaintiff to refute the implication that jurisdiction is lacking. Gibbs v. Buck, 307 U.S. 66 (1939); Nelson v. Keefer, 451 F.2d 289 (3d Cir. 1971); see also Suber v. Chrysler Corp., 104 F.3d 578, 583-84 (3d Cir. 1997) ("'[T]he record must clearly establish that after jurisdiction was challenged the plaintiff had an

---

Bell v. South Bay European Corp., 486 F. Supp. 2d 257, 257 n.1 (S.D.N.Y. 2007)(case *sub judice* omitted). Significantly, the Bell court added:

> Mr. Bell is not a stranger to the rule that a lay person may not represent an entity. In February 2002, Naki General Investment, L.L.C. commenced an action in this Court represented by an attorney. Naki General Investment, L.L.C. v. Schaeffer Buick Inc., 02 Civ. 0959(SAS). Counsel was granted leave to withdraw because of an alleged threat by Mr. Bell "to slit my f__king throat". (*See* Transcript of April 5, 2002 proceeding before Judge Scheindlin at 2, 5.) Mr. Bell, an officer of the entity, was instructed to retain counsel. When no counsel appeared for the plaintiff entity after repeated opportunities to do so, the action was dismissed. (Order of May 22, 2002 (Docket # 8)) Thereafter Mr. Bell refilled an action in this District styled as Renzer Bell, doing business as Nakhi General Investment v. Schaeffer Buick, Inc., 03 Civ. 10315(PKC). The undersigned did not bar Mr. Bell from proceeding *pro se*, despite what now appears to be a transparent attempt to circumvent Judge Scheindlin's ruling."

Bell, at 260. In sum, plaintiff, who controls companies that operate from post office boxes and whose records he claims not to have, has filed more than a dozen different lawsuits in federal courts in New York, Florida, and in this court. It is evident to us that plaintiff is more of a professional litigant than he is a professional car trader.

opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention.'").

Plaintiff has had numerous opportunities to show that his claim meets the proper amount in controversy for the Court to exercise its jurisdiction over his case. In the end, it is Plaintiff's own statements that demonstrate it is a legal certainty that his claim, including his alleged incidental damages, totals less than $75,000.01.[7]

## CONCLUSION

For the reasons expressed above, Plaintiff's case must be dismissed for lack of subject matter jurisdiction. Accordingly, all other pending motions must be denied as moot.

Dated: September 28, 2007

At Camden, New Jersey

NOEL L. HILLMAN, U.S.D.J.

---

[7] Plaintiff also argues that because the $4,000 was paid to his corporation, Nakhi General Investment, LLC ("Nakhi"), rather than to him individually, and because Nakhi is not a party to this action, the $4,000 must not be considered. With that same argument, however, it could be argued that Plaintiff's claimed damages are actually Nakhi's as well, and, thus, Plaintiff is the improper party to this action. The Court does not believe that Plaintiff wishes that his case be dismissed because he is not the proper party. Moreover, the documents in the record before the Court evidence that the veil between Nakhi and Plaintiff is illusory. See Pearson v. Component Technology Corp., 247 F.3d 471, 485 (3d Cir. 2001) (citing RRX Indus., Inc. v. Lab-Con, Inc., 772 F.2d 543, 545 (9th Cir. 1985) (veil-piercing is appropriate when "the personalities of the corporation and individual are no longer separate")).

14